## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JIMMIE PRYOR,<br><br>      Plaintiff,<br><br>v.<br><br>UNIVERSITY OF UTAH, et al.<br><br>      Defendants. | **MEMORANDUM DECISION & ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS**<br><br>Case No. 2:24-cv-00286<br><br>District Judge Ann Marie McIff Allen<br><br>Magistrate Judge Daphne A. Oberg |

## <u>INTRODUCTION</u>

This is an action under Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. §§ 1981 and 1983, in which Plaintiff Jimmie Pryor alleges that Defendants the University of Utah (the "University") and Alexandra Starr discriminated against him based on his race and retaliated against him when he engaged in protected activity in response to the discrimination. The matter is presently before the Court on the University's Partial Motion to Dismiss Plaintiff's First Amended Complaint[1] (the "Complaint") and Ms. Starr's Motion to Dismiss[2] (each, a "Motion"; together, the "Motions"). The University and Ms. Starr both contend that Plaintiff's § 1981 and § 1983 claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), citing various immunity doctrines and statutory limitations. For the following reasons, the Court will grant the University's Motion and grant Ms. Starr's Motion in part and deny it in part.

---

[1] ECF No. 9.
[2] ECF No. 10.

## BACKGROUND[3]

Plaintiff is a mental health professional with extensive experience working with adolescents.[4] He began working for the University in 2018 as a Psychiatric Technician at the Youth Residential Treatment Center ("YRT"), where Ms. Starr was his supervisor.[5] Plaintiff is a Black man, and during his time at YRT, both residents and staff made racially offensive and derogatory comments to him or in his presence.[6] For example, a YRT staff member blamed Plaintiff when staff were required to attend a sensitivity training seminar conducted by the University's Office for Equal Opportunity ("OEO").[7]

In 2019, Plaintiff reached out to OEO to discuss his concerns about this behavior, and while he did not file a formal complaint, OEO relayed Plaintiff's concerns to Ms. Starr.[8] Nevertheless, the work environment at YRT remained unchanged, as staff members continued using offensive language.[9] Notably, staff members referred to Black people using terms like "mulatto" or "colored" and called Plaintiff "beastly."[10]

In 2020, Plaintiff approached Ms. Starr to voice some of his concerns and, at a subsequent follow-up meeting, recounted the offensive and derogatory comments and behavior of staff and residents.[11] Ms. Starr determined that Plaintiff should first address this conduct with his coworkers

---

[3] The facts laid out here are drawn from the allegations in the Complaint, which, for purposes of the Motions, the Court assumes to be true to the extent they are well-pleaded. *See Leverington v. City of Colo. Springs*, 643 F.3d 719, 723 (10th Cir. 2011).
[4] ECF No. 2-5 at 2–3.
[5] *Id.* at 3.
[6] *Id.*
[7] *Id.* at 4.
[8] *Id.*
[9] *Id.* at 4–5.
[10] *Id.*
[11] *Id.* at 5–6.

directly before she got involved.[12] Ms. Starr then cut the meeting short, and while she assured

Plaintiff that she would reach out to him to resume the conversation in the future, she never did

so.[13]

Plaintiff was not satisfied with the outcome of his conversations with Ms. Starr, so he

decided to approach OEO again.[14] Presented with the option of filing a formal complaint or

pursuing mediation, Plaintiff chose the latter.[15] The day after OEO contacted Ms. Starr to organize

mediation, however, Ms. Starr contacted the Director of Intermediate Services and a Human

Resources representative at the University to raise concerns about Plaintiff's job performance.[16]

Prior to that point, Ms. Starr had never raised any performance concerns with Plaintiff.[17]

Six days later, Ms. Starr met with Plaintiff and gave him a "Memorandum of Success" (the

"Memo").[18] The Memo stated that it was intended to "clarify expectations" and was not "a

disciplinary or adverse action, but rather an attempt to avoid any type of discipline or other action

which could negatively impact [Plaintiff's] status."[19] Nevertheless, the Memo accused Plaintiff of

creating a hostile work environment by failing to attend staff meetings and preventing coworkers

from doing so and stated that further action, including potential disciplinary action, would be

---

[12] *Id.* at 6.

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.* at 6–7.

[17] *Id.* at 7.

[18] *Id.* A copy of the memo is attached as an exhibit to Ms. Starr's Motion. *See* ECF No. 10-1. The Court is permitted to consider the Memo at this stage because although it was not attached to any of Plaintiff's pleadings, Plaintiff references it in the amended complaint, it is central to Plaintiff's claims, and Plaintiff has not disputed its authenticity. *GFF Corp. v. Assoc. Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[19] ECF No. 10-1 at 2.

forthcoming if Plaintiff's behavior did not change.[20] Among other things, the Memo directed Plaintiff to "[a]ttend weekly staff meeting [himself], allow another staff [sic] to attend, or designate a staff [sic] to attend."[21] When Plaintiff asked for clarification about the assertions in the Memo, Ms. Starr declined to speak further about it.[22] The Memo, which was added to Plaintiff's personnel file, did not contain any information about how, if at all, Plaintiff could appeal or respond to it.[23]

After receiving the Memo, Plaintiff designated a staff member to attend the June 3, 2020 staff meeting.[24] Subsequently, another staff member indicated that she wanted to attend the meeting as well, but Plaintiff told her that he had already designated someone to attend.[25] When this staff member complained to Ms. Starr, Ms. Starr reprimanded Plaintiff, telling him that he was not permitted to designate a staff member to go to the meeting.[26]

In light of these experiences with Ms. Starr, Plaintiff determined that mediation would not be helpful and decided to file an official OEO complaint.[27] One week after Plaintiff's complaint was served on Ms. Starr, she issued a Notice of Pre-Disciplinary Conference to Plaintiff (the "First Notice").[28] The First Notice asserted that Plaintiff had neglected to provide a patient with medication (i.e., a gummy vitamin) and defrauded Medicare by making a billing error.[29] Plaintiff was placed on administrative leave pending the Pre-Disciplinary Conference, which took place the

---

[20] *Id.* at 2–3.
[21] *Id.* at 3.
[22] ECF No. 2-5 at 7.
[23] *Id.*; *see* ECF 10-1 at 2–3.
[24] ECF No. 2-5 at 8.
[25] *Id.*
[26] *Id.*
[27] *Id.* at 9.
[28] *Id.*
[29] *Id.*

next day.[30] At the conference, Plaintiff asserted that he administered medications in accordance with his training and that the billing error was simply a mistake.[31] He also indicated that other staff members were not reprimanded—let alone put on administrative leave—when they missed medications or made billing errors.[32]

A few days after the conference, Plaintiff received word that Ms. Starr was considering whether to terminate him and that he would remain on administrative leave until Ms. Starr had made her decision.[33] One week after the conference, Ms. Starr informed Plaintiff that he would not be terminated but would remain on administrative leave, as punishment, for an additional four days.[34] Soon after he returned to work, Ms. Starr gave Plaintiff a Final Written Warning (the "Starr Warning") for the alleged medication and billing errors.[35] At this time, Plaintiff expressed his belief that Ms. Starr was retaliating against him for filing an OEO complaint and accordingly appealed the Starr Warning by filing a grievance just under a week later.[36]

As Plaintiff continued working under Ms. Starr, additional issues arose.[37] For instance, Ms. Starr scheduled Plaintiff to work at times when she knew he had personal matters to attend to and declined to let another staff member cover his shift when they offered to do so.[38] Ms. Starr also

---

[30] *Id.*
[31] *Id.* at 10.
[32] *Id.*
[33] *Id.*
[34] *Id.*
[35] *Id.*
[36] *Id.* at 11.
[37] *See id.*
[38] *Id.*

asked staff members to "keep an eye" on Plaintiff and let her know if he failed to complete assignments—something she did not do with respect to non-Black staff members.[39]

The University later placed Plaintiff on administrative leave and issued another Notice of Pre-Disciplinary Conference (the "Second Notice").[40] The Second Notice cited Plaintiff for insubordination, failing to give a patient medication, and failing to follow medication protocols.[41] At the ensuing conference, Plaintiff disputed the claims of insubordination and asserted that he simply could not locate the medication at issue and had to attend to a more pressing matter before he could complete the required form.[42] Non-Black YRT staff members made the same mistakes but were not disciplined.[43]

OEO subsequently issued a final report on Plaintiff's complaint, finding cause to support his claims of discrimination and suspending Ms. Starr.[44] Three days later, however, the University suspended Plaintiff without pay and issued him a Final Written Warning (the "University Warning") regarding the missed medication.[45] At this time, the University informed Plaintiff that he had the option to transfer to a position in a different department.[46] When Plaintiff said he wanted to stay at YRT, a University official told him that the transfer was actually mandatory and part of his discipline.[47] Consequently, Plaintiff was transferred to the Inpatient Detox unit at the Huntsman

---

[39] *Id.* at 11–12.
[40] *Id.* at 12–13.
[41] *Id.* at 13.
[42] *Id.*
[43] *Id.*
[44] *Id.* at 14–15.
[45] *Id.* at 14.
[46] *Id.*
[47] *Id.*

Mental Health Institute ("HMHI").[48] Plaintiff's new position involved new and undesirable duties, such as assisting patients with using the toilet.[49] Plaintiff's new role also involved working with adult patients, so he was unable to continue working with adolescents as he had been for his whole career up to that point.[50] In addition, moving to the new position required Plaintiff to change his schedule significantly and make a much longer commute.[51]

Plaintiff later filed another discrimination complaint against Ms. Starr and another University official with OEO, this time alleging that his suspension, transfer, and the accompanying University Warning were retaliation for his initial OEO complaint.[52] He also filed a charge of discrimination against Ms. Starr with the Utah Antidiscrimination and Labor Division ("UALD").[53] On November 24, 2023, after UALD found that Ms. Starr had retaliated against Plaintiff and the Equal Employment Opportunity Commission issued a Notice of Right to Sue, Plaintiff filed an initial complaint in state court.[54] Following some conflicts with other staff members at HMHI, the University terminated Plaintiff, after which he filed the Complaint at issue here in state court.[55] Plaintiff asserts the following claims in the Complaint: (1) discrimination against the University under Title VII ("Count 1"), (2) retaliation against the University under Title VII ("Count 2"), (3) deprivation of Plaintiff's right to equal protection against both Defendants

---

[48] *Id.*
[49] *Id.* at 14–15.
[50] *Id.* at 15.
[51] *Id.*
[52] *Id.* at 16.
[53] *Id.* at 17.
[54] *Id.* at 18; *see* ECF No. 2-3 at 19–24.
[55] *See* ECF No. 2-5 at 18–27. To be clear, Plaintiff alleges that his termination was retaliatory, but the allegations from his time at HMHI are not relevant here—and the Court need not delve into them—because (1) the Court will grant the University's Motion on purely legal grounds and (2) those allegations do not involve Ms. Starr.

under § 1983 ("Count 3"), (4) discrimination against both Defendants under § 1981 ("Count 4"), and (5) retaliation against both Defendants under § 1981 ("Count 5").[56] Plaintiff requests damages, including punitive damages against Ms. Starr in her individual capacity, and equitable relief, including reinstatement.[57] Defendants removed the action to this Court and now move to dismiss Count 3, Count 4, and Count 5.[58]

## APPLICABLE LAW

Under Federal Rule of Civil Procedure 12(b)(6), a claim is subject to dismissal if the plaintiff's complaint fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In construing a plaintiff's complaint, the Court will assume the truth of any well-pleaded facts and draw all reasonable inferences in the light most favorable to the plaintiff. *See Leverington*, 643 F.3d at 723. To survive a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

As indicated above, the Motions only concern Plaintiff's claims under § 1981 and § 1983, so the Court will now lay out some important considerations for applying these statutes.

### I.    Section 1983.

Section 1983 provides relief against any "person" who violates the constitutional rights of an individual in the United States, 42 U.S.C. § 1983. Notably, neither states nor agencies that are "arms of the state," such as state universities, are considered "persons" subject to suit under § 1983.

---

[56] *See id.* at 27–33.
[57] *See id.*
[58] ECF No. 2 at 1–2; ECF No. 9 at 1–2; ECF No. 10 at 1–2.

*Will v. Mich. Dept. of State Police*, 491 U.S. 58, 64, 70 (1989); *see Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 575 (10th Cir. 1996) (concluding that the University of Utah is an arm of the state). This principle also applies to state officials when they are sued in their official capacity under § 1983, as the requested relief in such cases "is only nominally against the official and in fact against the official's office and thus the sovereign itself." *Lewis v. Clarke*, 581 U.S. 155, 162 (2017); *see McLaughlin v. Bd. of Trustees of State Colleges of Colo.*, 215 F.3d 1168, 1170-72 (10th Cir. 2000) (concluding that, while defendant had waived its Eleventh Amendment immunity by removing the action to federal court, plaintiff failed to state a § 1983 claim because defendant was an arm of the state and therefore not subject to suit under the statute). Even so, a state official may be subject to suit in his or her official capacity under § 1983 where the plaintiff seeks prospective equitable relief. *Will*, 491 U.S. at 71 n.10.

## II.    <u>Section 1981.</u>

Section 1981 provides that individuals in the United States, regardless of their race, have an equal right to, among other things, "make and enforce contracts" and enjoy "the full and equal benefit of all laws and proceedings," 42 U.S.C. § 1981. Nevertheless, an individual's options for asserting his rights under § 1981 may be limited in certain circumstances. Most notably, in *Jett v. Dallas Independent School District*, the Supreme Court explained that § 1983 is the exclusive avenue through which a plaintiff may seek relief against a state entity in connection with a § 1981 claim. *See* 491 U.S. 701, 705, 713–36 (1989) (discussing the legislative history of § 1981 and § 1983 and concluding, in the context of damages claims against a municipal school district, that "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units");

*Bolden v. City of Topeka*, 441 F.3d 1129, 1134–1137 (10th Cir. 2006) (concluding that *Jett* remains good law and applying it to a § 1981 claim against a municipality). Even so, the Court is unaware of—and no party has cited—any controlling authority suggesting that § 1983 is also the sole means for seeking relief under § 1981 against a state official in his or her *individual* capacity. *See Bird v. Regents of N.M. State Univ.*, 619 Fed. App'x 733, 743-44, 759 (10th Cir. 2015) (unpublished) (implicitly treating plaintiff's § 1981 and § 1983 individual-capacity claims as separate matters in a qualified immunity analysis).

### III.   <u>Standard for Discrimination Claims.</u>

When a plaintiff asserts claims of racial discrimination, courts follow the same analysis in § 1981 and § 1983 cases as they do in Title VII cases. *Drake v. City of Fort Collins*, 927 F.2d 1156, 1162 (10th Cir. 1991).[59] Thus, to establish a prima facie case of racial discrimination, a plaintiff must show that (1) he belongs to a protected class, (2) he suffered an adverse employment action, and (3) the circumstances of that action give rise to an inference of discrimination. *Hysten v. Burlington Northen & Santa Fe Ry.*, 296 F.3d 1177, 1181 (10th Cir. 2002). A plaintiff may satisfy the second prong of this test by showing that he experienced a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Piercy v. Maketa*, 480 F.3d

---

[59] This analysis may include applying the steps of the well-known *McDonnell Douglas* framework. *See Drake*, 927 F.2d at 1162. Nevertheless, the Court wishes to stress that the burden-shifting component of *McDonnell Douglas* is not applicable in the context of a motion to dismiss. *See Kendrick v. Penske Transp. Servs.*, 220 F.3d 1220, 1226 (10th Cir. 2000) ("[T]he three-part *McDonnell Douglas* burden-shifting analysis is limited to the summary judgment context."); *see also Morman v. Campbell Cty. Mem. Hosp.*, 632 Fed. App'x 927, 933–34 (10th Cir. 2015) (unpublished) (noting that the *McDonnell Douglas* burden-shifting mechanism "is only an evidentiary standard").

1192, 1203 (10th Cir. 2007). As to the third prong of the inquiry, a plaintiff may make the required showing by demonstrating that the defendant "treated similarly situated employees more favorably." *Hysten*, 296 F.3d at 1181.

### IV.    <u>Standard for Retaliation Claims.</u>

As to retaliation, the Court notes as a threshold matter that retaliation claims are not cognizable under § 1983, *Allstate Sweeping, LLC v. Black*, 706 F3d 1261, 1266 (10th Cir. 2013); *see also id.* at 1264 n.1, 1266 (explaining, in the context of an appeal regarding individual-capacity claims only, that § 1983 does not permit retaliation claims), but a plaintiff may bring such claims under § 1981. *See Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 998 (10th Cir. 2011). To succeed on a retaliation claim under § 1981, a plaintiff must establish that (1) he engaged in protected activity in opposition to discrimination; (2) the defendant responded in a way that a reasonable person would consider materially adverse; and (3) there is a causal connection between his protected activity and the adverse response. *Parker Excavating, Inc. v. Lafarge W., Inc.*, 863 F.3d 1213, 1220 (10th Cir. 2017).

### V.    <u>Qualified Immunity.</u>

Of course, even where a plaintiff has properly alleged the elements of a § 1981 or § 1983 claim, qualified immunity may come into play where the defendant is a state actor. *See Gallegos v. Denver*, 984 F.2d 358, 364 (10th Cir. 1993) (applying qualified immunity to claims under § 1981 and § 1983 against municipal officials). "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Leverington*, 643 F.3d at 732 (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

When qualified immunity is raised in the context of a motion to dismiss, a court assesses (1) whether the plaintiff has alleged a violation of a constitutional right and (2) whether such constitutional right was "clearly established" when the alleged violation took place. *Id.* (quoting *Pearson*, 555 U.S. at 231). A court may analyze these two issues in whichever order is appropriate under the circumstances. *Id.* The Tenth Circuit has long recognized that it is clearly established that a public employer may not discriminate based on race or retaliate against employees for opposition to racial discrimination. *See Ramirez v. Dep't of Corr.*, 222 F.3d 1238, 1243–44 (10th Cir. 2000) (concluding that plaintiffs' rights were clearly established where they alleged claims of racial discrimination and retaliation, including allegations of unjustified discipline).

As is relevant here, any alleged violation by a state official in his or her individual capacity under § 1981 or § 1983 must include personal involvement by the official in the alleged misconduct. *See Iqbal*, 556 U.S. at 676 (explaining that, in a § 1983 suit, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *Allen v. Denver Pub. Sch. Bd.*, 928 F.2d 978, 983 (10th Cir. 1991), *overruled on other grounds by Kendrick v. Penske Transp. Servs.*, 220 F.3d 1220 (10th Cir. 2000) ("A claim seeking personal liability under section 1981 must be predicated on the actor's personal involvement. There must be some affirmative link to causally connect the actor with the discriminatory action." (internal citations omitted)).

**VI.   Mootness.**

In applying the foregoing principles, the Court may only adjudicate actual controversies and may not address claims that are moot. *Smith v. Becerra*, 44 F.4th 1238, 1247 (10th Cir. 2022).

A claim is moot where the plaintiff's injury is not "likely to be redressed by a favorable judicial decision" on that claim. *Id.*

## ANALYSIS

At the outset, the Court notes that, while the pending Motions only address Count 3, Count 4, and Count 5, analyzing these causes of action involves careful parsing due to the multiple statutes at issue, the character and capacity of each Defendant, the conduct alleged, and the different types of relief requested. Accordingly, the Court will first address the claims against the University, discussing both § 1981 and § 1983 and whether those statutes may provide damages or equitable relief under the circumstances. Next, the Court will turn to the claims against Ms. Starr, differentiating between her individual and official capacities and considering what remedies may be available against her for the types of conduct alleged in the Complaint.

## I.      Plaintiff's § 1981 and § 1983 Claims Against the University.

Turning first to the § 1983 claims against the University, the Court concludes that these claims are not cognizable, as the University is an arm of the state and therefore not a "person" subject to suit under the statute. *See Will*, 491 U.S. at 64, 70; *Watson*, 75 F.3d at 575. Consequently, any claim against the University under § 1981 must also be dismissed because § 1983 is the sole avenue for Plaintiff to pursue such a claim. *See Jett*, 491 U.S. at 705, 713–36; *Bolden*, 441 F.3d at 1134–1137. Accordingly, because Plaintiff's § 1981 and § 1983 claims against the University are not cognizable, the Court will grant the University's Motion.[60]

---

[60] The University also asserts Eleventh Amendment immunity from Plaintiff's § 1981 and § 1983 claims. While the Court will grant the University's Motion on other grounds, it should also note that the University waived any Eleventh Amendment immunity that it may have had by removing the action to this Court. *See Sutton v. Utah St. Sch. For Deaf and Blind*, 173 F.3d 1226, 1234 (10th

II.     **Plaintiff's § 1981 and § 1983 Claims Against Ms. Starr.**

    a.   <u>Official-Capacity Claims and Claims for Equitable Relief.</u>

Turning now to Ms. Starr, because any claim against her in her official capacity amounts to a claim against the University itself, any official-capacity claims against her is not cognizable for the same reasons discussed above with regard to the University. *See Lewis*, 581 U.S. at 162; *McLaughlin*, 215 F.3d at 1170-72. The Court acknowledges that official-capacity claims against state officials are cognizable when the plaintiff seeks prospective equitable relief, *Will*, 491 U.S. at 71 n.10, but any claim for equitable relief against Ms. Starr—whether in her individual or official capacity—is now moot because, as Plaintiff seems to acknowledge, she is no longer a University employee and is therefore incapable of providing such relief, *see Smith*, 44 F.4th at 1247.[61] Accordingly, the Court will dismiss all claims against Ms. Starr in her official capacity, as well as any claims seeking equitable relief against her.

    b.   <u>Individual-Capacity Claims for Damages.</u>

Having addressed all the official-capacity claims and claims for equitable relief against Ms. Starr, the Court must now address the claims for damages against Ms. Starr in her individual

---

Cir. 1999) ("[A]n unequivocal intent to waive immunity seems clear when a state, facing suit in its own courts, purposely seeks a federal forum.").

[61] Plaintiff contends that Ms. Starr's successor should be added as a defendant, but doing so is unnecessary here because, as Plaintiff himself notes, the University can provide whatever prospective relief Plaintiff may request from Ms. Starr's successor.

capacity,[62] which can be categorized as claims arising under either § 1981 or § 1983 and subcategorized as claims for either discrimination or retaliation.

### i. Damages under § 1983.

As noted above, § 1983 does not permit retaliation claims, so any damages claim against Ms. Starr for retaliation under that statute will be dismissed. *See Allstate Sweeping*, 706 F3d at 1264 n.1, 1266. Ms. Starr is not, however, entitled to a dismissal of Plaintiff's damages claim for discrimination under § 1983.

As an initial matter, Plaintiff has sufficiently pleaded each element of this discrimination claim. Ms. Starr does not deny that Plaintiff is a member of a protected class and satisfies the first element of his claim. *See Hysten*, 296 F.3d at 1181. In addition, Plaintiff has sufficiently pleaded the second element, as he alleges that he was suspended without pay and involuntarily transferred to a position with significantly different and much less desirable responsibilities as a result of the Starr Warning. *See Piercy*, 480 F.3d at 1203.[63] Moreover, Plaintiff alleges that non-Black staff

---

[62] Ms. Starr appears to argue in her Motion that Plaintiff has not stated any individual-capacity claim against her because her alleged conduct was mostly performed as part of her job as Plaintiff's supervisor. Ms. Starr, however, misunderstands the law on this point, as the distinction between official- and individual-capacity claims does not concern the role the defendant was playing when the alleged misconduct occurred. *See Hafer v. Melo*, 502 U.S. 21, 27 (1991) (rejecting the contention that "the distinction between official and personal-capacity suits . . . turns . . . on the capacity in which they acted when injuring the plaintiff.")

[63] Ms. Starr argues in her Motion that she was not personally involved in the University Warning that was issued in connection with Plaintiff's transfer, but the Complaint sufficiently alleges that the University Warning stemmed from the Starr Warning, as both warnings cited the same conduct, i.e., the missed medication. Thus, Plaintiff has alleged the required causal connection between Ms. Starr's conduct and an adverse employment action. *See Allen*, 928 F.2d at 983. In addition, because the amended complaint sufficiently alleges Ms. Starr's personal involvement in discriminatory conduct, the Court will, at this juncture, decline to address Ms. Starr's arguments that Plaintiff has failed to sufficiently plead supervisory liability.

15

members were not disciplined for the conduct cited in the Starr Warning and the University Warning, so he has satisfied the third element as well. *See Hysten*, 296 F.3d at 1181.

Furthermore Ms. Starr has not demonstrated that she is entitled to qualified immunity on Plaintiff's damages claim under § 1983. As indicated above, Plaintiff has a clearly established right to be free from racial discrimination in the workplace. *See Ramirez*, 222 F.3d at 1243–44.[64] In addition, contrary to Ms. Starr's arguments, Plaintiff sufficiently alleges her personal involvement as indicated above, as he alleges that she issued the Starr Warning that ultimately led to his transfer and was based on conduct that did not yield disciplinary action for non-Black staff members. *See Iqbal*, 556 U.S. at 676.

Thus, while the Court will dismiss any retaliation claim against Ms. Starr under § 1983, Plaintiff's § 1983 damages claim against her in her individual capacity for discrimination may proceed.

### ii. Damages under § 1981.

Finally, the Court will address Plaintiff's claims for damages against Ms. Starr under § 1981.[65] To start, because the Court has concluded that Plaintiff has sufficiently pleaded a

---

[64] Ms. Starr argues that *Ramirez* is inapplicable because it involved specific examples of discrimination and retaliation that do not match the alleged fact pattern here. But Plaintiff has alleged conduct of the very kind that Ms. Starr highlights from *Ramirez*. Indeed, Ms. Starr notes that *Ramirez* involved unjustified discipline, and that is exactly what Plaintiff says occurred here. *See Ramirez*, 222 F.3d at 1243. Moreover, Plaintiff does not need to cite caselaw "directly on point" to overcome an assertion of qualified immunity. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

[65] Here, the Court again notes that while Ms. Starr argues that she is not subject to suit under § 1981 based on the principle outlined in *Jett* and its progeny, those cases involved § 1981 claims against state entities, and she has not cited any similar case applying *Jett* to claims against a state official in his or her individual capacity. *See Bird*, 619 Fed. App'x at 743-44, 759. Accordingly, while Ms. Starr does not reach these issues in her Motion, the Court will proceed to determine whether Plaintiff has sufficiently pleaded the elements for discrimination and retaliation claims under § 1981. *See Twigg*, 659 F.3d at 998; *Drake*, 927 F.2d at 1162.

discrimination claim against Ms. Starr under § 1983, it likewise concludes that he has stated such a claim under § 1981, as the elements of these two claims are identical. *See Drake*, 927 F.2d at 1162.

The Court further concludes that Plaintiff has sufficiently pleaded each element of a retaliation claim under § 1981. As to the first element, Ms. Starr does not appear to dispute that Plaintiff engaged in protected activity when he raised his concerns and filed complaints with OEO. *See Parker Excavating*, 863 F.3d at 1220. For the second element, Plaintiff has sufficiently alleged that Ms. Starr responded to these actions in a way that a reasonable person would consider adverse, as the Complaint states that Ms. Starr responded to his protected activity by accusing him of creating a hostile work environment, singling him out for reprimand, and, most critically, issuing the Starr Warning that precipitated his suspension and transfer. *See id.* As to the third element, Plaintiff has pleaded a causal connection between his protected activity and the adverse response by alleging a close temporal relationship between his and Ms. Starr's actions. *See id.* Notably, the amended complaint states that Ms. Starr (1) began raising issues about Plaintiff's performance for the first time the day after she received word of his mediation request, (2) issued the Memo just six days later, (3) issued the First Notice one week after receiving Plaintiff's initial OEO complaint, (4) immediately placed him on administrative leave after issuing the First Notice, and (5) issued the Starr Warning soon after he returned to work.[66]

Additionally, while Ms. Starr makes no arguments on the issue of qualified immunity with respect to § 1981, the Court concludes that she has not shown that she is entitled to qualified

---

[66] The Court also notes that, while Ms. Starr argues that some conduct alleged in the amended complaint falls outside the applicable statute of limitations, it does not need to address that

immunity for the reasons discussed above with respect to § 1983. *See Iqbal*, 556 U.S. at 676; *Ramirez*, 222 F.3d at 1243–44.

Thus, the Court will deny Ms. Starr's motion with respect to Plaintiff's individual-capacity damages claims for discrimination and retaliation under § 1981.

## **CONCLUSION & ORDER**

In summary, the Court will dismiss Count 3, Count 4, and Count 5 as to the University, and the Complaint may proceed as follows with respect to Ms. Starr, solely in her individual capacity: Count 3 may proceed to the extent it requests damages for discrimination, Count 4 may proceed to the extent it requests damages, and Count 5 may proceed to the extent it requests damages. All other claims alleged against Ms. Starr will be dismissed.

Accordingly, the Court GRANTS Defendant University of Utah's Partial Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 9) and GRANTS IN PART and DENIES IN PART Defendant Alexandra Starr's Motion to Dismiss (ECF No. 10).

DATED this 2nd day of October 2024.

BY THE COURT:

Ann Marie McIff Allen
United States District Judge

---

argument here, as Ms. Starr does not deny that the alleged conduct discussed in the Court's analysis occurred within the statute of limitations period.